UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CLAIMABLE LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CLAIMABLE INC.,<br><br>Defendant. | No. 2:25-cv-02048 WBS SCR<br><br><u>MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT</u> |

----oo0oo----

Plaintiff Claimable Limited is a London-based company that sells "claims management software services for businesses" under the name CLAIMABLE. (SUF II (Docket No. 47-2) ¶¶ 1, 21.) Plaintiff utilizes a monthly subscription model for its services (SUF I (Docket No. 35-1) ¶ 2). It made its first sale in the United States in 2013 (SUF II ¶ 3) and has sold its services in the United States continuously ever since (<u>see</u> <u>id.</u> ¶ 21; Jacobs Decl. (Docket No. 31) Tables 1 & 2).

Defendant Claimable, Inc. is a U.S.-based company that assists individuals with appealing denials of their insurance

claims. (See Docket No. 30 at 2; Docket No. 53 at 6.) In October of 2024, defendant "began to offer its services commercially." (SUF I ¶ 11.) Like plaintiff, defendant has "us[ed] the word CLAIMABLE to identify both itself and its services." (See Docket No. 30 at 2.)

Plaintiff sued defendant on July 22, 2025, for infringement of plaintiff's alleged common-law service mark[1] on the word CLAIMABLE. (Docket No. 1.) Before the court are the parties' cross-motions for summary judgment on plaintiff's service-mark rights in the word CLAIMABLE (Docket No. 30; Docket No. 35), as well as plaintiff's motion for summary judgment on infringement (Docket No. 39).

## I. Legal Standard

Summary judgment is appropriate when the moving party demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The moving party bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[1] "Service marks and trademarks are governed by identical standards." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1156 (9th Cir. 2001). "[T]he only difference between [them] is that a trademark identifies goods while a service mark identifies services." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, id. at 251–52.

## II. Discussion

Establishing a "protectible ownership interest" in a service mark is an essential element of proving infringement. Lodestar Anstalt v. Bacardi & Co. Ltd., 31 F.4th 1228, 1245 (9th Cir. 2022) (citations and quotations omitted). The court accordingly addresses the parties' cross-motions for summary judgment on the issue of service-mark rights before addressing plaintiff's motion for summary judgment on infringement.[2]

### A. Ownership of Enforceable Service Mark

[2] Plaintiff brings infringement claims under both the Lanham Act and California state law. (See Docket No. 1 Count I (infringement under the Lanham Act), Count II (unfair competition under the Lanham Act), Count III (California common-law infringement); Count IV (California statutory unfair competition).) Plaintiff's state-law claims are nevertheless subject to the same "legal standards" as their corollary claims under the Lanham Act. See, e.g., Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir. 1994); Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1221 (9th Cir. 2012).

"[T]he standard test of ownership" of a service mark is "priority of use" of the mark in commerce. Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). That is, "the party claiming ownership must have been the first to actually use the mark in the sale of . . . services." Id. The use must be a "'bona fide use,'" rather than a use that is "'made merely to reserve a right in a mark.'" Lodestar, 31 F.4th at 1255 (quoting 15 U.S.C § 1127). Even a "single sale may suffice to establish [bona fide] use in commerce," so long as it is "accompanied or followed by activities which would tend to indicate a continuing effort or intent to continue such use and place the [service] on the market on a commercial scale within a time demonstrated to be reasonable in the particular trade." Lodestar, 31 F.4th at 1256 (quotations omitted) (citing Soc. Techs. LLC v. Apple Inc., 4 F.4th 811, 821 n.11 (9th Cir. 2021); Chance, 242 F.3d at 1157).

"[T]he totality of the circumstances" governs whether a party has met the "bona fide use" threshold. Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir. 2001). In making this assessment, courts are to consider the extent of sales made in connection with the mark, as well as the following factors:

> the genuineness and commercial character of the activity;
>
> the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark;
>
> the scope of the non-sales activity relative to what

would be a commercially reasonable attempt to market the service;

the degree of ongoing activity of the holder to conduct the business using the mark;

the amount of business transacted; and

other similar factors which might distinguish whether a service has actually been "rendered in commerce".

Id.

The owner of a common-law service mark, in contrast to owners of federally registered marks,[3] must also demonstrate that its "'mark is known and recognized'" in those territories in which it seeks to enforce the mark. San Diego Cnty. Credit Union v. Citizens Equity First Credit Union, 60 F.4th 481, 500 (9th Cir. 2023) (quoting Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 436 (9th Cir. 2017)); see also Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 416 (1916) (holding a common-law trademark is enforceable in "every market where the trader's goods have become known and identified by his use of the mark," but not "to markets where there is no article to wear the badge and no trader to offer the article"); see generally 2 McCarthy on Trademarks and Unfair Competition § 26:27 (5th ed.

[3] Owners of federally registered marks enjoy a presumptive right to seek damages against all infringing junior users nationwide, see Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 439 (9th Cir. 2017), abrogated in part on other grounds by Romag Fasteners, Inc v. Fossil, Inc., 590 U.S. 212 (2020), and to seek an injunction against all infringing junior users anywhere the mark owner is or is likely to expand, San Diego Cnty. Credit Union v. Citizens Equity First Credit Union, 65 F.4th 1012, 1028 (9th Cir. 2023).

Sept. 2026 update) ("McCarthy").

i. Bona Fide Use

The court concludes there is no genuine issue of fact that plaintiff has made a bona fide use of the mark in commerce. At a high level, defendant does not dispute that plaintiff "has used its mark in the United States continuously since 2013." (SUF II ¶ 21.) Nor does defendant dispute that plaintiff has "dedicated resources to growing and marketing its CLAIMABLE mark in the United States." (Docket No. 87 ¶ 108.)

More specifically, plaintiff owns and operates www.claimable.com, which is accessed by customers and potential customers in connection with plaintiff's services. (Docket No. 87 ¶ 106.) Plaintiff's services are based on a monthly subscription model, for which plaintiff has engaged in over 1,000 transactions in the United States. (See SUF I ¶¶ 2, 3; SUF II ¶ 8.); Seal Shield, LLC v. Otter Prods., LLC, No. 13-CV-2736-CAB (NLS), 2014 WL 11350295, at *7 (S.D. Cal. Nov. 4, 2014) ("To this court's knowledge, the Ninth Circuit has never found a person's bona fide sales of marked goods insufficient to establish proprietary rights in a mark, where the sales were not made merely to reserve a mark."). The monthly invoices for these services clearly display the CLAIMABLE mark. (See Jacobs Decl. Ex. D; Tinsley Decl. Ex. 2.) Plaintiff has also enjoyed increasing sales over time as well as "a steady increase in the total number of global and U.S. signups year-to-year." (SUF II ¶¶ 25, 38.) On these undisputed facts, a reasonable juror could only conclude that plaintiff has used its mark "'for genuine commercial reasons.'" Lodestar, 31 F.4th at 1255 (quoting Social

Techs., 4 F.4th at 820–21) (emphasis omitted).

Defendant's arguments to the contrary are unavailing. Defendant argues that, because plaintiff asserts common-law service-mark rights -- as opposed to the service-mark rights of a federally registered mark -- it is not enough for plaintiff to show a bona fide use of the mark in commerce. (Docket No. 30 at 7.) Instead, according to defendant, plaintiff must have also demonstrated that it adequately penetrated the relevant market, based on the following factors:

> (1) the volume of sales, (2) growth trends (both positive and negative), (3) the number of persons actually purchasing the products in relation to the potential number of customers, and (4) the amount of product advertising in the area.

(Id. (citing Adray v. Adry-Mart, Inc., 76 F.3d 984, 989 (9th Cir. 1995); Optimal Pets, Inc. v. Nutri-Vet, LLC, 877 F. Supp. 2d 953, 961–62 (C.D. Cal. 2012)).) Under these factors, defendant argues plaintiff has not penetrated the relevant market and therefore cannot "establish common law trademark rights over the CLAIMABLE mark." (Id. at 14.)

Defendant is incorrect that the tests for requisite use of a mark in commerce are different between common-law marks and federally registered marks. To the contrary, the Ninth Circuit has repeatedly instructed that the use-in-commerce standard is the same for common-law and federally registered marks. See Chance, 242 F.3d at 1157 (holding that the Lanham Act's bona-fide-use requirement is "entirely consistent with the traditional rules governing common law ownership of trademarks"); Dep't of

Parks & Rec. for State of Cal. v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1125 (9th Cir. 2006) ("Registration under the Lanham Act has no effect on the registrant's rights under the common law, which requires a mark to have been used in commerce before a protectible ownership interest in the mark arises."). "Accordingly, the general rule remains that all common law and registration rights rest on the use-based rule of first-in-time, first-in-right." Lodestar, 31 F.4th at 1236 (citing McCarthy § 16:1 (5th ed. 2022 Update)) (alterations and internal quotations omitted).

None of defendant's cases change this analysis. Defendant relies on Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc., in which the Third Circuit found that, because the plaintiff had not shown it had penetrated the relevant market, the plaintiff had consequently failed to demonstrate its mark had been used in commerce. 186 F.3d 311, 316–18 (3d Cir. 1999). This case represents a departure from the "traditional" rule across circuits that a mark owner's market penetration is relevant, not for determining whether a mark had been used in commerce, but for determining the geographic scope of the owner's rights.[4] See id. at 323–26 (Ackerman, J., dissenting); McCarthy § 16:6 (collecting cases). Indeed, the vast majority of defendant's other cases stand for this very proposition.[5] As the

---

[4] The court will accordingly consider plaintiff's market penetration when assessing the geographic scope of plaintiff's service-mark rights.

[5] See Nat. Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1394–1404 (3d Cir. 1985) (developing four-factor market-penetration test to determine "the territorial extent" of

Third Circuit's rule conflicts with Ninth Circuit authority requiring that "first-in-time, first-in-right" govern the threshold use-in-commerce requirement for all trademark rights (whether based on common law or federal registration), this court declines to require market penetration as an additional element of establishing bona fide use in commerce.

ii. Geographic Scope of Enforceability

Although defendant is incorrect that plaintiff must establish sufficient market penetration as an element of proving adequate use in commerce, plaintiff does need to show sufficient market penetration in order to show the geographic scope of its rights. See Adray v. Adry-Mart, Inc., 76 F.3d 984, 989 (9th Cir.

---

injunctive relief of the right of each party to use the [contested] mark"); Adray v. Adry-Mart, Inc., 76 F.3d 984, 989 (9th Cir. 1995) (addressing market penetration when determining the "geographic scope" of the owner's rights); Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) (holding that market penetration is relevant to determine the "geographic extent" of the owner's trademark rights); Optimal Pets, Inc. v. Nutri-Vet, LLC, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012) (same); SunEarth, Inc. v. Sun Earth Solar Power Co., 846 F. Supp. 2d 1063, 1075 (N.D. Cal. 2012) (same); Chroma Makeup Studio LLC v. Boldface Grp., Inc., No. CV 12-9893 ABC (PJWx), 2013 WL 12114826, at *17 (C.D. Cal. Jan. 23, 2013) (same); Klivington-Evans v. PassingYourOBGYNBoards.com, No. CV-24-02677-PHX-DWL, 2024 WL 4444372, at *3 (D. Ariz. Oct. 8, 2024) (noting market penetration must be shown to have "common law trademark rights within a geographical area").

Defendant also cites Zazu Designs v. L'Oreal, S.A., 979 F.2d 499 (7th Cir. 1992). Although the Seventh Circuit stated (contrary to Ninth Circuit precedent) that the threshold use required for federal registration is "slightly" more lenient than at common law, id. at 503, the court simply held (consistent with the Ninth Circuit's totality-of-circumstances test) that the appellee's minimal "pre-marketing maneuvers" were insufficient to bestow "nationwide rights in the absence of registration," id. at 505.

1995). In this respect, the Ninth Circuit has endorsed defendant's four-factor test for determining sufficient market penetration: "the volume of sales, the positive and negative growth trends, the number of people who purchased the party's goods in relation to the number of potential customers, and the amount of advertising." Id. The court assesses market penetration as of the time of first alleged infringement -- here, October 2024. See ACCU Pers., Inc. v. AccuStaff, Inc., 846 F. Supp. 1191, 1206 (D. Del. 1994) (citing Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1397 (3d Cir. 1985)).

Plaintiff asserts that its rights in the CLAIMABLE mark extend nationwide. Plaintiff concedes, however, that if the court were to require plaintiff to show nationwide market penetration, it could not show entitlement to summary judgment. (Docket No. 35 at 20) (concluding that, if the court requires a showing of nationwide market penetration, then the issue "is one of disputed fact that should be put to a jury"). Therefore, the only issue that remains is whether defendant has shown, beyond a genuine dispute, that plaintiff has not adequately penetrated the nationwide market.

Applying the above factors, no reasonable juror could conclude that plaintiff is entitled to nationwide enforcement of its service-mark rights. The factor most detrimental to plaintiff's claim to nationwide rights is the ratio of plaintiff's actual customers to its potential customers. It is undisputed that, from the date of first sale in 2013 to defendant's entry into the market in October 2024, plaintiff sold its services to no more than 54 unique customers in the United

States. (SUF I ¶ 12.) This number of customers is particularly insignificant given plaintiff characterizes its potential customer base as "including but not limited to insurance adjusters, brokers, in-house claims management teams, service providers, worker's compensation claims teams, manufacturers, logistics companies, construction companies, and educational institutions." (SUF I ¶ 28.) Indeed, plaintiff cannot identify any meaningful upper limit to its potential customer base, such that it might include "more than ten million potential U.S. customers."[6] (Id. ¶¶ 26-27); see also Coomes v. Edmonds Sch. Dist. No. 15, 816 F.3d 1255 (noting that, where a non-movant shows "there is an absence of evidence to support the non-moving party's case . . . , the burden then shifts to the nonmoving party to designate specific facts demonstrating the existence of genuine issues for trial"). No reasonable juror could find that procuring 54 customers over roughly 11 years, in a market with no upper limit of potential customers, supports a finding of nationwide market penetration.

Nor could any other market-penetration factor move a reasonable juror to find nationwide market penetration. For

---

[6] This fact comes from plaintiff's responses to defendant's requests for admission regarding the number of plaintiff's potential customers. (SUF I ¶¶ 41-43; Docket No. 31-1 at 5-8.) Plaintiff asserts this fact is disputed, since plaintiff's failure to provide an upper limit was purportedly a consequence of plaintiff's not knowing the "precise" number and not finding it appropriate to give an approximation. (Id.; SUF I ¶ 27.) Plaintiff, however, failed to provide the court with any clarity as to the total number of its potential customers. The court thus finds it undisputed that plaintiff cannot provide an upper limit to its number of potential customers.

advertising, although plaintiff asserts it has advertised with Google Ads for "over a decade" (Tinsley Decl. (Docket No. 36) ¶ 49), the only pre-October-2024 evidence it provided in this respect is from a 2017 "hard launch" campaign that yielded 6,247 impressions and 152 clicks (id. Ex. 5). Apart from the campaign being generally directed to the United States, plaintiff did not offer any evidence as to the geographic distribution of those who were exposed to the advertising. Without this information, a juror could not conclude whether those who were exposed to the advertising were distributed throughout the nation or were all concentrated in one small locality. See Hanginout, Inc. v. Google, Inc., 54 F. Supp. 3d 1109, 1124 (S.D. Cal. 2014). Plaintiff's other evidence of advertising similarly fails to provide any information on the location of those who were exposed to the advertising. (See Tinsley Decl. ¶ 49 & Ex. 1 (asserting plaintiff sent hundreds of marketing emails in the United States in 2009, but failing to identify where in the United States these recipients were located); SUF II ¶¶ 9, 11 (asserting only that plaintiff has interacted with thousands of potential customers without specifying where in the United States these potential customers are located); id. ¶¶ 34-36 (asserting only that plaintiff uses Google Ads, Facebook Ads, and Capterra "to promote its business"). A reasonable juror thus could not find that this factor weighs in favor of plaintiff.

For sales volume, plaintiff issued over 1,000 monthly invoices from its date of first sale in 2013 until defendant's entry into the market in October 2024 (SUF I ¶ 6), generating a revenue of approximately $504,997 (Tinsley Decl. (Ex. 3) at

CLALTD003303). Neither party has provided any evidence as to the significance of these figures relative to other services in the industry, and thus the court cannot determine the strength of the figures themselves. See Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc., 921 F.2d 467, 473 (3d Cir. 1990) ("Whether a volume of sales is significant will vary with the product and the market."); see also Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 985 (C.D. Cal. 2002) (finding plaintiff was unlikely to succeed on issue of market penetration where there was no evidence as to how plaintiff's "market penetration compare[d] with that of its competitors"). However, even if these were strong sales figures, plaintiff cannot show that they demonstrate strong sales nationwide. Indeed, these roughly 11-years' worth of sales come from customers in, at most, 26 states and zero U.S. territories. (SUF I ¶¶ 18-20.) In 12 of these states, plaintiff had only one customer. (Id. ¶ 20.) In five states, plaintiff had only two customers. (Id.) Only in eight states did plaintiff have three or more customers. (Id.) A reasonable juror thus could not find that this factor weighs in favor of nationwide enforceability. See Optimal Pets, Inc. v. Nutri-Vet, LLC, 877 F. Supp. 2d 953, 962 (C.D. Cal. 2012) (overturning verdict in favor of market penetration where plaintiff "had no sales at all in 34 states" and minimal sales in 12 states); see also Hanginout, 54 F. Supp. at 1122 (finding absence of evidence regarding location of plaintiff's users "dispositive" on the issue of plaintiff's sales volume).

Plaintiff's growth trends suffer from the same issue. It is true that plaintiff's sales have been undisputedly

increasing. From 2014 through 2024, plaintiff's yearly sales went from $3,082 to $117,049, increasing year by year (except for a slight decrease from 2016 to 2017). (Tinsley Decl. (Ex. 3) at CLALTD003303.) Moreover, plaintiff "has experienced a steady increase in the total number of global and U.S. [customer leads] year-to-year." (SUF II ¶ 38.) Again, without any evidence from either party as to how these growth trends compare to those of others in the claims management software industry, the court cannot assess the strength of these growth areas by themselves. However, as with plaintiff's sales volume, plaintiff has provided no evidence from which a juror could conclude that its growth trends reflect nationwide growth rather than growth in a more localized area.[7]

The court thus concludes that no reasonable juror could find plaintiff is entitled to a nationwide right to enforce the CLAIMABLE service mark. Defendant's request that the court go so far as to dismiss all of plaintiff's claims with prejudice, however, is too sweeping of a request on this record. See Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1206 (9th Cir. 1999) ("Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the

[7] Defendant also provided a summary of the growth in plaintiff's customers year over year. (Jacobs Decl. Table 2.) It appears that, although plaintiff's customer base grew annually from 2013 to 2019, its customer base has generally stagnated from 2019 to 2024, fluctuating between 19 and 23 yearly customers. (Id.) It is not clear whether plaintiff disputes the figures defendant provided. Regardless, even if a juror concluded this data demonstrated a growing customer base, there is still no evidence from which a juror could conclude that the growth is occurring nationwide rather than in a smaller locality.

trademark arena.") Although plaintiff cannot show on this record that it is entitled to enforce its service mark in every neighborhood, city, state, and territory in the nation, plaintiff may be able to show enforceable rights in at least some of the areas in which the alleged infringement has occurred.

B. Infringement

"To prevail on any trademark-infringement claim, the plaintiff must have a valid and enforceable trademark." Yuga Labs, Inc. v. Ripps, 144 F.4th 1137, 1157 (9th Cir. 2025) (emphasis added). Accordingly, because plaintiff has not shown it is entitled to summary judgment on the issue of enforceability, the court need not address plaintiff's likelihood-of-confusion arguments.

IT IS THEREFORE ORDERED that the parties' motions for summary judgment (Docket No. 30; Docket No. 35; Docket No. 39) be, and the same hereby are, DENIED. Pursuant to Federal Rule of Civil Procedure 56(g), however, the court finds there is no genuine dispute of the fact that plaintiff has made a bona fide use of the CLAIMABLE mark in commerce, and there is no genuine dispute of the fact that plaintiff does not have nationwide enforceability of its CLAIMABLE mark. The court thus treats these facts "as established in the case." Fed. R. Civ. P. 56(g).

Dated: October 16, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE